IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WILLIE HENDERSON,

                                                 OPINION AND ORDER

                Plaintiff,

                                                 19-cv-405-bbc

     v.

ANGELA THOMPSON, KATHERINE THOMPSON,
SHARI KLENKE AND CINDY BARTER,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Pro se plaintiff Willie Henderson is proceeding on claims that nursing staff at the Redgranite Correctional Institution failed to provide him a wheeled walker with a seat and brakes for his chronic leg and back pain, in violation of the Eighth Amendment and state negligence law. (I have revised the caption to reflect defendants' full names.) Before the court is defendants' motion for summary judgment. Dkt. #17. Although plaintiff was given two opportunities to respond to defendants' motion and propose findings of fact of his own, he failed to do so. Dkt. ##23, 25. However, it appears that plaintiff has not lost interest in pursuing his case altogether because he submitted (1) a statement from his treating physician stating that he uses a walker with a seat, dkt. #27; and (2) a letter to the court in which he explains that an attorney whom he had trusted to handle his case was no longer interested in helping him, dkt. #26. Plaintiff did not make any requests of the court in either submission.

1

After reviewing the evidence in the record, I conclude that plaintiff has not shown that defendants acted with deliberate indifference or negligence in failing to provide him a wheeled walker with a seat. Accordingly, I will grant defendants' motion and close this case.

From defendants' proposed findings of fact, I find the following facts to be undisputed unless otherwise noted.

## UNDISPUTED FACTS

### A. The Parties

Plaintiff Willie Henderson arrived at Redgranite Correctional Institution in April 2018 and was incarcerated there at all times relevant to this lawsuit. Defendants all worked at the institution during this time: Katherine Thompson, Shari Klenke and Cindy Barter held the position of nurse clinician 2 and Angela Thompson was the health services manager.

The health services manager does not evaluate, diagnose, treat or prescribe medications for inmates. Nurse clinicians do not have the authority to prescribe equipment such as a wheeled walker; this must be done by an advanced care provider and approved by the Special Needs Committee. Angela Thompson was a member of the Special Needs Committee, but Klenke, Barter and Katherine Thompson were not.

### B. Plaintiff's Treatment and Health Service Requests

Between April 2018 and February 2019, the health services unit responded to 34 health service requests from plaintiff and saw him at least 25 times regarding his concerns

about a wheeled walker with a seat, wheelchair, leg brace, leg pain and other issues. He had x-rays of his leg and an ultrasound of his left arm, multiple blood tests and a sleep study.

On April 19, 2018, defendant Klenke saw plaintiff for an initial intake assessment. Klenke noted that plaintiff had a walker and used a wheelchair for long distances. Plaintiff reported that he had a hard time lifting his foot to walk and arrived wearing only one shoe. Klenke contacted the laundry to get plaintiff a pair of black velcro shoes instead of the regular state shoes and scheduled an appointment for plaintiff with the advanced care provider.

On April 25, 2018, plaintiff saw non-defendant Dr. Dilip Tannan for an initial examination. Dr. Tannan noted that plaintiff walked with the help of a walker for short distances and used a wheelchair for long distances because he had had surgery to remove a sarcoma on his right thigh. Dr. Tannan continued plaintiff's permanent low bunk low tier restrictions, issued a restriction for a wheeled walker with a seat for ambulation for one year, referred plaintiff to physical therapy and ordered an ultrasound of a lump on plaintiff's left shoulder and an x-ray of his right hip and femur.

On May 1, 2018, plaintiff was fitted for a wheeled walker with a seat. However, the only walker available had an non-adjustable seat that was too high for plaintiff. Plaintiff was issued this walker, and the nurse noted she would see if a shorter one was available for him to use instead. On May 7, defendant Klenke responded to a health service request submitted by plaintiff who complained that his walker was too big. Klenke responded that she would

schedule an appointment to assess the fit and instructed plaintiff to bring the walker to his appointment.

On May 23, 2018, plaintiff was briefly evaluated by non-defendant physical therapist Robert Rhodes. Plaintiff said that he would like to use the leg brace he had prior to being incarcerated. Rhodes noted that plaintiff had a two-wheeled walker, but fell when he tried to use it. On May 30, plaintiff again saw Rhodes, who recommended that plaintiff be allowed to use the brace he had been using on the outside, if security allowed it. Rhodes forwarded this request to defendant Angela Thompson. He also instructed plaintiff to perform hip and knee exercises to maintain flexibility but stated his belief that plaintiff had a poor prognosis for strength gain in his leg four years after his injury. Rhodes told plaintiff to submit a request to him in two to four weeks for a follow up.

On May 31, 2018, a new wheeled walker was sent to plaintiff's unit for him to use. On June 5, defendant Angela Thompson received a health service request from plaintiff in which he asked about a wheeled walker with a seat and brakes and stated that he was using his wheelchair because he did not have the right type of walker. Angela Thompson responded the same day that plaintiff needed to use the walker that was already provided to him until the doctor clarified his order.

Two days later, on June 7, 2018, plaintiff saw Dr. Tannan and complained that his wheeled walker with a seat and brakes was too tall for him, but Dr. Tannan noted that those types of walkers were on back order. Dr. Tannan entered an order that plaintiff be allowed to use a wheelchair until a wheeled walker with a seat was available. According to defendant

4

Angela Thompson, Dr. Tannan's order for a wheeled walker with a seat apparently was never entered into plaintiff's medical record. She explains that on June 25, 2018, Redgranite went live with the Electronic Medical Record (EMR) system. Prior to that date, Redgranite kept all medical records on paper files. The undertaking and time commitment involved in converting hundreds of files and thousands of pages to electronic records, implementing new systems and policies and training staff on these new systems inevitably led to staff confusion, problems with the new system and errors.

On June 19, 2018, the health services unit received a letter from Dr. Robert Brown who had treated plaintiff at Aurora Medical Group prior to his incarceration. Dr. Brown asked that plaintiff be allowed to wear his leg brace daily to help with his problems of mobility and pain. Dr. Brown did not state that plaintiff required a walker of any type. Outside providers like Dr. Brown issue recommendations only to the institution providers. As a general rule, the health services unit does not follow the recommendations of outside providers because the Department of Corrections has various policies and security protocols of which outside providers are not aware.

On June 25, 2018, defendant Katherine Thompson received a health service request from plaintiff in which he complained that he needed to get out of his wheelchair and walk around because his back "went out." He also complained that the wheelchair was bothering his hands and that he felt like he had carpal tunnel syndrome. After reviewing plaintiff's record, Katherine Thompson responded that day that a wheeled walker had been ordered for him but that it had not yet arrived and he should be patient. According to defendant

Angela Thompson, the health services unit does not have a large stock of wheeled walkers with seats. The health services unit must order medical supplies such as walkers through a pre-approved vendor catalogue to avoid any security concerns associated with bringing equipment into the institution. Although a new wheeled walker with a seat was ordered for plaintiff, it was on back order with the company that supplies them to the prison. It often takes an extended period of time to receive a walker under those circumstances.

On June 26, 2018, plaintiff was seen in the health services unit. He complained that his current pain medications (meloxicam and acetaminophen) were not working and that he wanted to renew his prescription for Topiramate 50 mg, which had expired.

On July 2, defendant Katherine Thompson received a health service request from plaintiff inquiring about his leg brace and his pain medication. She responded that day that his pain medication order was still active and that he should address any other concerns, including his leg brace, at his provider appointment scheduled for later that week. Also on July 2, defendant Klenke received a health service request from plaintiff asking about the status of his leg brace and pain medication. She responded that day, stating that Angela Thompson would meet with him to discuss the brace and that he had an appointment scheduled with an advanced care provider to address his other concerns.

On July 11, 2018, plaintiff met with Angela Thompson about his health service requests regarding his leg brace. Based on a review of plaintiff's record and the physical therapist's recommendation, Thompson agreed that plaintiff should be able to use the brace

6

that he had prior to incarceration, if security approved it. She issued plaintiff a memo asking him to have the brace sent to the address on the memo.

On July 16, 2018, defendant Klenke received a health service request from plaintiff in which he asked about the status of his leg brace and his walker with a seat and brakes. She forwarded the request to Angela Thompson who responded that there were no rollators (wheeled walkers), but that they had regular walkers. She also said that plaintiff's leg brace would be provided as soon as security cleared it. On July 24, 2018, plaintiff's leg brace was approved by Angela Thompson and security, and it was issued to him.

On July 27, 2018, plaintiff saw non-defendant Nurse William Borgen about his July 24 health service request regarding his request for a wheeled walker with a seat. Plaintiff reported he needed a smaller wheeled walker than the one he was originally given so that when his muscles start to spasm, he has somewhere safe to sit down. Borgen performed an "Activity Tolerance Evaluation" and referred plaintiff to the advanced care provider for further evaluation and consideration of a wheeled walker with a seat. Dr. Adebola Ibirogba directed Borgen to refer the request to the Special Needs Committee.

On August 6, 2018, defendant Barter received a call from Correctional Officer Wagner on plaintiff's unit. Wagner reported that plaintiff was walking through the day room and out on the courtyard without using his walker or a wheelchair. He also reported that plaintiff went to the cafeteria without his leg brace at lunch that day. Wagner completed a functional observation form in which he wrote that plaintiff could walk steadily with his knee brace and without his walker.

Also on August 6, 2018, defendant Barter received a health service request from plaintiff in which he (1) complained that his back had given out and another inmate had to help him to a seat in the dayroom because he did not have a walker with a seat and brakes; and (2) requested that he be issued a walker with a seat and brakes. (Although the request was dated January 4, 2017, Angela Thompson believes that it was misdated because plaintiff was not incarcerated in 2017.) Barter responded the same day that the Inmate Special Needs Workers on his unit could assist him to a chair as needed or help him walk to places where chairs are available so that he could rest.

On August 17, 2018, Dr. Ibirogba assessed plaintiff and noted that he was in a wheelchair with his leg brace and was in no acute distress. She determined that plaintiff should continue with the current plan of care with a follow up in three months.

On September 25, 2018, defendant Barter received a health service request from plaintiff, who reported that he broke the top strap of his brace after he slept in it. He reported that it was fixable and asked that it be repaired. Barter scheduled him to see a nurse and told him that he would have an appointment in 90 days. Plaintiff did not state that he was in any pain or that he had any problem other than with the top strap of his brace.

On November 8, 2018, plaintiff was seen for a sick call because of complaints of swollen fingers. Although he refused treatment for his fingers, he complained about his request for a wheeled walker because of his mobility concerns. Non-defendant Nurse Russell Johnson advised him to submit a health service request because his concern was outside the

scope of her prescribing abilities and it needed to be addressed by an advanced care provider. On November 9, defendant Barter received another health service request from plaintiff in which he asked if he could use his wheelchair on and off the unit because he could not carry his clothes in his hands while using a walker. (The wheelchair that plaintiff used belonged to his housing unit. Although plaintiff was allowed to use the wheelchair, it was not his own personal property.) She responded that day that he could hang his clothes on his walker while using it. On November 12, Barter saw plaintiff regarding his walker. Plaintiff arrived in a wheelchair and Barter asked him what kind of walker he was using. He pointed to a two-wheeled walker without a seat that was nearby.

C.  Special Needs Committee Evaluation of Plaintiff

Pursuant to Bureau of Health Services Policy and Procedure #300:07, which took effect August 1, 2009, facilities are to establish a committee or assign a specific nurse and security liaison to address requests for special needs and restrictions, such as a special mattress or mobility equipment. Prescribing practitioners refer items to the committee and nurse for review of special needs rather than write orders for specific items. The policy states that the security level and physical environment of the facility must be considered when authorizing special needs and restrictions.

The Special Needs Committee determines whether an inmate requires a medical restriction or has a special need based on a medical necessity. The committee is comprised of one or more staff representatives from the health services unit, a staff representative from

9

security and a non-security staff representative. The committee representatives independently review special needs requests received from inmates and make a recommendation based on their role. The health services unit representative(s) on the committee review the inmate's relevant medical records and determine if the item or action requested by the inmate is medically necessary. The Special Needs Committee follows health services policy and Procedure #300:07, established nursing protocols and the institution's security guidelines when authorizing special needs requests.

If a special needs request is approved, nursing staff will document the special need or restriction on a "Medical Restrictions/Special Needs (DOC-3332B)" form, listing a start and stop date. A copy of the DOC-3332B is sent to the inmate. If the Special Needs Committee denies the special needs request, the inmate is typically notified via memorandum.

The members of Redgranite's Special Needs Committee at the time in question in this lawsuit were defendant Angela Thompson, Joli Grenier, Terry Jaeger, Zachary Schroeder and Lynnae Sievert. As the health services unit representative, Angela Thompson's only duty was to review the inmate's relevant medical records and determine if the item or action requested was medically necessary.

On November 20, 2018, non-defendant Nurse Amy Peterson saw plaintiff for a special needs evaluation for a wheeled walker with a seat. In her evaluation, she noted that he had nerve damage to his right leg and back from prior surgery. Plaintiff had used a wheeled walker with a seat in the past so that he would have some place to sit when his back or leg spasms got bad. He also used it to help carry his things from place to place. Peterson

10

noted that he currently pushed his wheelchair, so a walker would help him walk around more. As part of the assessment, Unit Manager Schroeder filled out a functional observation form detailing plaintiff's mobility on the housing unit. Schroeder noted that plaintiff used the regular walker or wheelchair from time to time but appeared to "function ok" without them.

The Special Needs Committee denied plaintiff's request for a wheeled walker with a seat on November 27, 2018, finding that a walker with wheels was not a safe option for someone experiencing muscle spasms. The committee reasoned that a wheeled walker might easily roll away from the user and result in a fall. Plaintiff already had a regular walker for short distances and access to a wheelchair to prevent injuries. Therefore, the committee reasoned that a wheeled walker with a seat was not medically necessary for him at that time. In addition, the seats on wheeled walkers are used to carry items such as meal trays or packages and are not generally rated to support having someone sit on them long term, as the press bar supporting the seat would deteriorate over time. If plaintiff was going to use the walker to sit on long term, it was more appropriate to sit in the wheelchair.

OPINION

Plaintiff alleges in his complaint that defendants violated his Eighth Amendment rights and state negligence law by deferring his repeated requests for a walker with a seat and brakes for almost a year, even though his outside physician and a prison doctor had prescribed one. (Although the allegations in plaintiff's complaint also suggest that he

11

believes that some of the defendants should have provided him with a leg brace, extra mattress and pain medication to prevent his leg and back pain while he waited for the walker with a seat and brakes, he was not allowed to proceed on a claim related to these items because his allegations did not make clear how or when any of the defendants denied him these things. In any event, the undisputed facts show that plaintiff did receive a leg brace and pain medication throughout the time period at issue in this case.)

I will discuss plaintiff's federal and state claims separately.

## A. Eighth Amendment

A prison official may violate the Eighth Amendment if the official is "deliberately indifferent" to a "serious medical need." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). See also Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (Eighth Amendment "protects prisoners from prison conditions that cause 'the wanton and unnecessary infliction of pain,'" including "grossly inadequate medical care."). Defendants accept for the purpose of summary judgment that plaintiff suffered from an objectively serious medical condition. Dkt. #18 at 5. Therefore, the question is whether plaintiff has submitted enough evidence to allow a reasonable jury to conclude that any of the defendants acted with "deliberate indifference" toward his serious medical need. Gomez v. Randle, 680 F.3d 859, 865 (7th Cir. 2012).

"Deliberate indifference" means that the officials were aware that the prisoner faced a substantial risk of serious harm but disregarded the risk by consciously failing to take

reasonable measures to address it. Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997). To be considered "deliberately indifferent," an official "must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Snipes v. Detella, 95 F.3d 586, 590 (7th Cir. 1996). Inadvertent error, negligence, gross negligence and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. Vance v. Peters, 97 F.3d 987, 992 (7th Cir. 1996).

Medical providers such as defendants in this case, may violate the Eighth Amendment if they prescribe a course of treatment without exercising medical judgment or if they do so knowing that the treatment will be ineffective. Whiting v. Wexford Health Sources, Inc., 839 F.3d 658, 662-63 (7th Cir. 2016). In cases like this one, in which a prisoner alleges that he received some treatment (in this case, medical equipment) for his medical condition, but that the treatment was inadequate, the relevant question is whether defendants' actions were "such a substantial departure from accepted professional judgment, practice, or standard, as to demonstrate that the person responsible actually did not base the decision on such a judgment." Estate of Cole by Pardue v. Fromm, 94 F.3d 254, 261-62 (7th Cir. 1996). In such cases, courts must defer to a medical professional's treatment decision unless no minimally competent professional would have chosen the same course of treatment under the circumstances. Pyles, 771 F.3d at 409. A "[d]isagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." Id.

13

Evidence sufficient to create a jury question might include the obviousness of the risk from a particular course of medical treatment, the defendants' persistence in "a course of treatment known to be ineffective" or proof that the defendants' treatment decision departed so radically from "accepted professional judgment, practice, or standards" that a jury may reasonably infer that the decision was not based on professional judgment.  Id.

Although plaintiff has submitted a letter dated January 6, 2021 in which Dr. Nicholas Pryomski at Aurora Health Care states that plaintiff *uses* a walker with a seat and brakes, plaintiff has failed to submit any evidence showing that acceptable medical practice would *require* him to use such a walker or that defendants otherwise acted with deliberate indifference to his serious medical need.  Therefore, I conclude that defendants are entitled to summary judgment on plaintiff's Eighth Amendment claims against them.

The undisputed facts show that defendants Katherine Thompson, Klenke and Barter received sporadic health service requests from plaintiff between June and November 2018, regarding the whereabouts of his wheeled walker with a seat and brakes.  However, it is undisputed that in their positions as nurse clinicians, Katherine Thompson, Klenke and Barter did not have the authority to order plaintiff a wheeled walker with a seat.  Medical equipment had to be prescribed by an advanced care provider and approved by the Special Needs Committee.  Although Dr. Tannan issued an order on April 25, 2018 for plaintiff to be issued a wheeled walker with a seat for one year, the initial walker provided to plaintiff in May 2018 was too big and there were no other wheeled walkers with seats in stock in the health services unit.  The undisputed facts show that prison medical staff fitted plaintiff for

a new wheeled walker with a seat May 2018 but that it remained on back order with the company that supplies the walkers to the prison. There is no evidence that defendants Katherine Thompson, Klenke and Barter, or for that matter, Angela Thompson, were responsible for the delay or could have taken any action to address it.

On July 27, 2018, a non-defendant nurse evaluated plaintiff for a wheeled walker with a seat and referred plaintiff's request for the walker to Dr. Ibirogba, who determined that because plaintiff was not in acute distress, she would continue plaintiff's current plan of care and follow up in three months time. In November 2018, Dr. Ibirogba referred plaintiff's request for a wheeled walker with a seat to the Special Needs Committee, which denied it after evaluating plaintiff's current needs and functioning.

Plaintiff has failed to present evidence showing that defendants Katherine Thompson, Klenke and Barter had any responsibility for the above delays or decisions, interfered with plaintiff's receipt of a wheeled walker with brakes or failed to take reasonable steps to address plaintiff's concerns. In fact, the undisputed facts show that these defendants responded to plaintiff's health service requests about the walker, plaintiff's leg brace and pain medication; passed along plaintiff's concerns about the wheeled walker with a seat to defendant Angela Thompson or advanced care providers; and provided or arranged for advanced care providers to provide him other treatment as needed. None of these defendants served on the Special Needs Committee or were responsible for evaluating plaintiff for any medical equipment. In addition, the sporadic contacts that Katherine Thompson, Klenke and Barter had with plaintiff during the time period at issue would not

have made them aware that he was being denied treatment (i.e., medical equipment) for a serious medical need.  First, it appears that Dr. Tannan's orders for a wheeled walker with a seat were not entered into the electronic medical system through no fault of defendants. Second, all three nurses knew that plaintiff already had access to a different type of walker and a wheelchair.  Finally, defendant Barter received a report on August 6, 2018 that plaintiff was walking without using his walker or a wheelchair.  Accordingly, defendants Katherine Thompson, Klenke and Barter are entitled to summary judgment on plaintiff's Eighth Amendment claims against them.

Although defendant Angela Thompson did not provide direct medical care to plaintiff and other inmates, she served on the Special Needs Committee at the time the committee was considering plaintiff's special needs request for a wheeled walker with a seat.  (Angela Thompson also was involved in approving a leg brace for plaintiff, but the brace is not at issue in this case.)  It is undisputed that after evaluating plaintiff, the Special Needs Committee determined on November 27, 2018 that a wheeled walker with a seat was not a safe option for someone like plaintiff, who was experiencing muscle spasms.  Although the committee apparently disagreed with Dr. Tannan's earlier assessment that plaintiff needed this type of walker, it provided well-founded reasons for its decision.

It is undisputed that a four-wheeled walker can easily roll away from its user and that it increases the likelihood of falls.  In addition, the seat is primarily used to carry items such as meal trays or packages and is not designed to support having someone sit on it over the long-term, as the press bar supporting the seat would deteriorate over time.  The committee

16

determined that if plaintiff was going to use the walker to sit, it was more appropriate for him to sit in a wheelchair. Plaintiff already had a regular walker for short distances and access to a wheelchair for sitting or longer distances.

Plaintiff has failed to present any evidence showing that defendant Angela Thompson's participation in the Special Needs Committee's decision not to issue plaintiff a wheeled walker with a seat for safety reasons fell below the standard of care for a health care provider under the circumstances, or even that any reasonable health care provider would have made a different decision under the circumstances. Although Dr. Tannan and one of plaintiff's outside treating physicians believed that a wheeled walker with a seat was appropriate for plaintiff at some point, that difference of opinion is not sufficient by itself to show deliberate indifference. Pyles, 771 F.3d at 409. In addition, there is no evidence that the absence of a wheeled walker with a seat actually caused plaintiff serious harm. The undisputed facts show that plaintiff always had access to a wheeled walker to get around for short distances and had the option to use his unit's wheelchair for long distances or when his condition necessitated sitting down.

## B.  Medical Negligence

To prevail on a claim for negligence in Wisconsin, plaintiff must prove that defendants breached their duty of care and that he suffered injury as a result. Paul v. Skemp, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 520, 625 N.W.2d 860, 865. Wisconsin law more specifically defines medical negligence as the failure of a medical professional to "exercise

17

that degree of care and skill which is exercised by the average practitioner in the class to which he belongs, acting in the same or similar circumstances." Sawyer v. Midelfort, 227 Wis. 2d 124, 149, 595 N.W.2d 423, 435 (1999); Shuster v. Altenberg, 144 Wis. 2d 223, 229, 424 N.W.2d 159, 161-62 (1988).

To succeed on his medical negligence claims against defendants, plaintiff has to show that defendants failed to use the required degree of skill exercised by an average nurse under the circumstances, that he suffered harm and that there is a causal connection between defendants' failures and his harm. Wis J-I Civil 1023. Expert testimony is required to establish the standard of care, unless "the situation is one in which common knowledge affords a basis for finding negligence." Sheahan v. Suliene, Case No. 12-cv-433-bbc, 2014 WL 1233700, at *9 (W.D. Wis. 2014). Plaintiff has failed to make any of these required showings, and his medical negligence claims fail for the same reasons as his Eighth Amendment claims. Therefore, defendants are entitled to summary judgment with respect to plaintiff's medical negligence claims against them.

ORDER

IT IS ORDERED that the motion for summary judgment filed by defendants Angela Thompson, Katherine Thompson, Shari Klenke and Cindy Barter, dkt. #17, is GRANTED. The clerk of court is directed to enter judgment for defendants and close this case.

Entered this 25th day of March, 2021.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge